Electronically FILED by Superior Court of California, County of Los Angeles on 06/30/2020 05:50 PM Sherri R. Carter, Executive Officer/Clerk of Court, by C. Monroe,Deputy Clerk
20STCV24671

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

Spotify USA, Inc.; The Execusearch Group, LLC; Courtney Holt; and DOES 1 through 10, Inclusive, Defendants.

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

Matthew Elias

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Stanley Mosk Courthouse, Central District
111 North Hill Street
Los Angeles, CA 90012

CASE NUMBER:
*(Número del Caso):*
20STCV24671

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Peter A. Javanmardi, Esq. | Marc A. Holmquist, Esq. 424.286.4240
Javanmardi Law, PC | Holmquist Law, PC
1875 Century Park East, Suite 1770, Los Angeles, CA 90067

Sherri R. Carter Executive Officer / Clerk of Court

DATE: *(Fecha)* June 30, 2020 Clerk, by *(Secretario)* C. Monroe , Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: Spotify USA, Inc.

under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☒ by personal delivery on *(date)*: 08/18/2020

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

Electronically FILED by Superior Court of California, County of Los Angeles on 06/30/2020 03:50 PM Sherri R. Carter, Executive Officer/Clerk of Court, by C. Monroe,Deputy Clerk
20STCV24671

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Maureen Duffy-Lewis

Peter A. Javanmardi, Esq., State Bar No. 258449
peter@javanmardilaw.com
Marc A. Holmquist, Esq., State Bar No. 258406
marc@holmquistlaw.com
JAVANMARDI LAW, PC | HOLMQUIST LAW, PC
1875 Century Park East, Suite 1770
Los Angeles, CA 90067
Telephone Number: (424) 286-4240
Facsimile Number: (310) 564-0347

Attorneys for Plaintiff MATTHEW ELIAS

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

MATTHEW ELIAS,

Plaintiff,

v.

SPOTIFY USA, INC.; THE EXECUSEARCH GROUP, LLC; COURTNEY HOLT; and DOES 1 through 10, Inclusive,

Defendants.

Case Number: 20STCV24671

[Unlimited Jurisdiction]

**COMPLAINT FOR DAMAGES:**

1. Retaliation in Violation of Labor Code (§§98.6, 1102.5);
2. Wrongful Discharge in Violation of Public Policy;
3. Defamation;
4. Intentional Infliction of Emotional Distress;
5. Breach of Employment Contract;
6. Breach of Covenant of Good Faith and Fair Dealing; and
7. Promissory Estoppel.

**[JURY TRIAL DEMANDED]**

Plaintiff MATTHEW ELIAS, demanding a jury trial, brings this action against Defendants SPOTIFY USA, INC.,; THE EXECUSEARCH GROUP, LLC; COURTNEY HOLT; and DOES 1 through 10, for general, compensatory, and punitive damages, penalties, costs and attorneys' fees resulting from Defendants' unlawful conduct, and as grounds therefore alleges as follows:

**GENERAL ALLEGATIONS**

1. Plaintiff MATTHEW ELIAS (hereafter "Plaintiff") was at all relevant times in this matter an adult male residing and working for Defendants in Los Angeles County, California.

2. Plaintiff is informed and believes, and based thereon alleges, that at all times relevant in this Complaint, Defendant SPOTIFY USA, INC. (hereafter "SPOTIFY") is and was a corporation authorized to operate in the State of California with its headquarters and principal place of business at 4 World Trade Center, 150 Greenwich Street, New York City, New York. SPOTIFY was one of Plaintiff's employers during the relevant time period described herein.

3. Plaintiff is informed and believes, and based thereon alleges, that at all times relevant in this Complaint, Defendant THE EXECUSEARCH GROUP, LLC (hereafter "EXECUSEARCH") is and was a corporation operating in the State of California with its headquarters and principal place of business at 675 Third Avenue, 5th Floor, New York City, New York. EXECUSEARCH was one of Plaintiff's employers during the relevant time period described herein.

4. Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned in this Complaint Defendant COURTNEY HOLT ("HOLT") is and was an adult male working and residing in Los Angeles County in the State of California. HOLT was at all relevant times an owner, director, officer, or managing agent of SPOTIFY.

5. Plaintiff is ignorant of the true names and capacities of Defendants sued as DOES 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by these Defendants.

6. Plaintiff is informed and believes and based thereon alleges that at all times, each Defendant, whether named or fictitious, was acting as an agent, employee, alter ego, joint venturer, joint employer, and/or integrated enterprise for or with each of the other Defendants and each were co-conspirators with respect to the acts and the

wrongful conduct alleged herein, and/or acted within the scope of their authority and/or ratified such conduct of the other(s), so that each is responsible for the acts of the other in connection with the wrongful acts of such other Defendants.

7. Plaintiff is informed and believes and based thereon alleges that each Defendant is so interrelated with each other Defendant that they amount to one entity for purposes of establishing liability. Plaintiff is informed and believes and based thereon alleges that each Defendant exercises such control over the other Defendant(s), including as to corporate decision-making, that they amount to and should be treated as one entity for purposes of establishing liability, including as to Plaintiff and the claims asserted herein.

8. Plaintiff is informed and believes and based thereon alleges that each Defendant has assumed the liability of each other Defendant, including as to Plaintiff, and/or is a successor of each other Defendant such that the successor has assumed liability of the other Defendant(s), and/or that as a result of the merger between one or more Defendants the other(s) have assumed liability of each other Defendant, including as to Plaintiff and the claims asserted herein.

9. Whenever and wherever reference is made in this Complaint to any act or failure to act by a defendant or co-defendant, such allegations and references shall also be deemed to mean the acts and/or failures to act by each defendant acting individually, jointly and severally.

10. Plaintiff is informed and believes and based thereon alleges that, at all times material herein, each Defendant and/or its respective agents, employees or supervisors, authorized, condoned and/or ratified the unlawful conduct of each other.

11. Plaintiff is informed and believes and based thereon alleges that, at all times material herein, Defendants and/or their respective agents, employees, or supervisors knew or reasonably should have known that unless they intervened to protect Plaintiff, and to adequately supervise, prohibit, control, regulate, discipline, and/or otherwise penalize the conduct of the employees of Defendants set forth above,

the remaining defendants and employees perceived the conduct and omissions as being ratified and condoned.

**FACTUAL ALLEGATIONS RELEVANT TO ALL CAUSES OF ACTION**

12. Plaintiff was jointly employed by SPOTIFY and EXECUSEARCH (the "DEFENDANT EMPLOYERS") as a Senior Producer for Spotify Studios in Los Angeles from about July 2016 through his wrongful termination in June 2018. His job included oversight of the DEFENDANT EMPLOYERS' shows being produced by third party production companies. His work included working on about five to six shows at a time; launching longform series (8-12 episodes, premium digital content); overseeing shows being made by third party production companies; overseeing those shows through any phase of production from pitch, development, attending shoots on set, making sure the show being produced aligned with the show purchased, editing back-and-forth with the production company and sending edits/notes back to the production company; preparing series for launch; coordinating internally with Spotify's marketing team and social team; assessing analytics tracking rating to evaluate viewership; traveling to attend out-of-state meetings; attending mandatory internal meetings; among other duties Defendants assigned to him at Defendants' locations in California.

13. DEFENDANT EMPLOYERS induced Plaintiff to leave his prior employment based upon representations regarding the position and the advantageous economic prospects of long-term employment with DEFENDANT EMPLOYERS. He was asked to "join the team" with DEFENDANT EMPLOYERS. Plaintiff was brought on the "team" and despite his clear status as an employee, early in his tenure he was misclassified as a "contractor." DEFENDANT EMPLOYERS continually promised Plaintiff that he would be moved into a permanent staff position thereafter but never did so. Plaintiff's proper classification was employee throughout his tenure with DEFENDANT EMPLOYERS.

14. Plaintiff and many other employees were misclassified as independent contractors for extended periods of time. They were actually at all times employees.

Indeed, throughout Plaintiff's tenure, he observed the DEFENDANT EMPLOYERS' regular practice of treating new staff as "contractors," and later converting them to regular employees. But while the DEFENDANT EMPLOYERS sometimes eventually classified others as employees after some period of time, they did not reclassify Plaintiff as an employee but rather continued to classify him as a contractor. In fact, early in Plaintiff's employment, DEFENDANT EMPLOYERS actually switched Plaintiff *from* being paid on a W-2 basis *to* being paid as a 1099 contractor, and never switched him back despite his many pleas that they do so.

15. While the DEFENDANT EMPLOYERS regularly promised to "convert" Plaintiff to a regular employee (i.e., to start properly classifying him), they never did so. Throughout Plaintiff's employment, he believed based on these representations that this "conversion" would be imminent. Further, just prior to his wrongful termination, Plaintiff saw his name on an organizational chart indicating his future role with the company. In reliance on these promises from DEFENDANT EMPLOYERS, Plaintiff did not pursue other employment opportunities.

16. DEFENDANT EMPLOYERS continued misclassifying Plaintiff. Among other detriments caused by the misclassification, Plaintiff was forced to pay out of pocket for health insurance and dental insurance, did not receive 401k benefits, nor other employer-provided benefits. Moreover, SPOTIFY's initial public offering occurred during Plaintiff's employment, and would have been lucrative for Plaintiff had he been treated as staff and provided with stock options as his colleagues were. Plaintiff is informed and believes that all SPOTIFY employees who were properly classified as employees received stocks or stock options as part of their compensation package.

17. Plaintiff complained about his misclassification to the DEFENDANT EMPLOYERS many times, and many times asked for them to start properly classifying him. For example, while attending a mandatory team offsite meeting in Los Angeles, Plaintiff discussed with a Human Resources employee from New York that he had been misclassified as a contractor for nearly two years. She looked shocked, said "That's not

right," and told him she would follow up. Plaintiff did follow up with multiple people, but in lieu of DEFENDANT EMPLOYERS starting to properly classify him as an employee, Plaintiff was wrongfully terminated.

18. In early Spring 2017, Jim Fraenkel was promoted from his position as Executive Producer. Rather than fill his vacated position with Plaintiff, Mr. Fraenkel hired someone else and continued to misclassify Plaintiff as a contractor.

19. In the Fall of 2017, Plaintiff is again promised that the "conversion" to employee status is imminent. However, the head of the department at the time, Tom Calderon, was soon after replaced by defendant HOLT. Plaintiff is informed and believes that HOLT blocked the staff conversion.

20. On or about June 30, 2018, Plaintiff was wrongfully terminated based on his protected complaints. DEFENDANT EMPLOYERS had no lawful basis to terminate his employment.

21. While acting in the course and scope of their employment with DEFENDANT EMPLOYERS, and/or on their behalf and in the furtherance of their business interests and with their prior knowledge, authority, consent, direction and/or ratification, DEFENDANT EMPLOYERS' owners, managers, agents, representatives, and/or employees, including Defendant HOLT, and others involved in the termination process, intentionally, willfully, purposely and maliciously published and on information and belief continue to republish certain untrue, slanderous and defamatory statements and insinuations of fact about Plaintiff.

22. Plaintiff is informed and believes that defendant HOLT and Mr. Fraenkel, and likely other senior employees at DEFENDANT EMPLOYERS, attempted to justify their mistreatment of Plaintiff by falsely publishing to other employees words to the effect that Plaintiff was bad at his job, not able to satisfactorily perform his duties, had bad "instincts" for the job, had bad work ethic, and that he was not "converted" to employee status and/or was terminated for those false reasons, as well as other similar negative and defamatory statements. Of course, all of these statements were false, as

evidenced by Plaintiff's long and successful employment tenure. DEFENDANT EMPLOYERS only began to view Plaintiff in a negative light when he became more and more vocal about the legal violations to which DEFENDANT EMPLOYERS had subjected him.

23. Such communication to third parties (i.e., parties who are not Plaintiff) constitutes publication. (*Kelly v. General Telephone Co.* (1982) 136 Cal.App.3d 278, 284.) Defendants did so maliciously, with no reasonable belief that the statements were true, with reasons to doubt the veracity of the statements, or knowing they were false. These flagrant, false, and defamatory statements were made with malice in order to support the wrongful conduct towards Plaintiff including his ongoing misclassification and his eventual wrongful termination, which were actually motivated by his protected complaints. The publication of all such statements with malice destroys any privilege that may otherwise attach to such publication. On information and belief, all of the foregoing defamatory statements were published excessively; i.e., to more third parties than needed to know, which further evidences malice. (*Rancho La Costa, Inc. v. Sup. Ct.* (1980) 106 Cal.App.3d 646, 665-6.)

24. Plaintiff is informed and believes and based thereon alleges that DEFENDANT EMPLOYERS or their owners, managers, agents, representatives, and/or employees have continued to make such false and defamatory statements since Plaintiff's termination. Said statements are also believed to be contained within Plaintiff's personnel file.

25. Since the termination, Plaintiff has been and is under a strong compulsion to repeat (i.e., to "self-publish") the untrue defamatory statements that Defendants made about him, including during his job search to explain his job loss from DEFENDANT EMPLOYERS. Plaintiff's compulsion to accurately publish the stated reasons (although untrue) for Defendants' mistreatment of him was a natural and probable consequence of Defendants' defamatory statements. (*McKinney v. County of Santa Clara* (1980) 110 Cal.App.3d 787, 796.) This was reasonably foreseeable to Defendants

when they, or when those acting on their behalf and/or with their prior knowledge, authority, consent, direction and/or ratification, first published those statements including to justify his termination. Such self-publications have occurred within the relevant statutory time period. Plaintiff is also informed and believes that other publications by Defendants have also been made during the relevant statutory time period.

**FIRST CAUSE OF ACTION**

**(Retaliation in Violation of the Labor Code**

**Against DEFENDANT EMPLOYERS and Does 1 through 10)**

26. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

27. Under California Labor Code section 1102.5(b) it is unlawful for an employer to retaliate against an employee for disclosing information to a person with authority over the employee if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

28. Under California Labor Code section 98.6 it is unlawful for an employer discriminate, retaliate, or take any adverse action against any employee because the employee or applicant engaged in any conduct delineated in this Chapter 5 of the California Labor Code, including section 1102.5. Other Labor Code sections provide similar protections against retaliation in the workplace.

29. For many months, Plaintiff complained to DEFENDANT EMPLOYERS that they had violated California law with respect to the terms and conditions of his employment, including their failures to properly classify him as an employee and the other Labor Code violations that resulted. DEFENDANT EMPLOYERS retaliated against him as a direct consequence of such complaints and protests. The retaliation

took the form of ongoing failures to comply with legal obligations with respect to Plaintiff, and ultimately Plaintiff's wrongful retaliatory termination.

30. By retaliating against Plaintiff for his protected activity, DEFENDANT EMPLOYERS have caused Plaintiff damages, including, but not limited to, substantial losses in earnings and job benefits, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and severe emotional distress and mental anguish, all to Plaintiff's damage in an amount over this Court's jurisdictional minimum, to be proven at trial.

31. In doing the acts herein alleged, DEFENDANT EMPLOYERS, through their officers, directors, and/or managing agents, acted with oppression, fraud, malice, and in the conscious disregard of the rights of Plaintiff; therefore, Plaintiff is also entitled to punitive damages in an amount according to proof at the time of trial.

32. As a further result of the wrongful conduct of DEFENDANT EMPLOYERS, Plaintiff is also entitled to attorneys' fees and costs pursuant to California Code of Civil Procedure section 1021.5 and Labor Code section 218.5.

**SECOND CAUSE OF ACTION**

**(Wrongful Discharge in Violation of Public Policy,**

**Against DEFENDANT EMPLOYERS and Does 1-10)**

33. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

34. The above-described conduct of DEFENDANT EMPLOYERS constituted retaliation as a direct consequence of Plaintiff's complaints and protests about illegal conduct and violations of public policy embodied in the California Labor Code, Business & Professions Code, and common law, as set forth herein.

35. By retaliating against Plaintiff for his protected activity, DEFENDANT EMPLOYERS have caused Plaintiff damages, including, but not limited to, substantial losses in earnings and job benefits, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and severe emotional distress and mental anguish, all

to Plaintiff's damage in an amount over this Court's jurisdictional minimum, to be proven at trial.

36. In doing the acts herein alleged, including but not limited to wrongful termination of Plaintiff's employment, DEFENDANT EMPLOYERS, through their officers, directors, and/or managing agents, acted with oppression, fraud, and/or malice, and in the conscious disregard of the rights of Plaintiff; therefore, Plaintiff is also entitled to punitive damages in an amount according to proof at the time of trial.

37. As a further result of the wrongful conduct of DEFENDANT EMPLOYERS, Plaintiff is also entitled to attorneys' fees and costs pursuant to California Code of Civil Procedure section 1021.5 and Labor Code section 218.5.

**THIRD CAUSE OF ACTION**

**(Defamation Against All Defendants and Does 1 through 10)**

38. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

39. Plaintiff is informed and believes Defendants, and each of them, by the herein described acts, conspired to, and in fact did, negligently, recklessly, maliciously, and intentionally caused internal and external publications of defamation, of and concerning Plaintiff, to third persons and to the community. These false and defamatory statements included express and implied statements that Plaintiff was bad at his job, not able to satisfactorily perform his duties, had bad "instincts" for the job, had bad work ethic, and that he was not "converted" to employee status and/or was terminated for those false reasons, as well as other similar negative and defamatory statements. The precise dates of each publication are not known, though Plaintiff is informed and believes that they occurred between throughout Plaintiff's employment and continue to this date.

40. The defamatory publications consisted of oral and written, knowingly false and unprivileged communications tending to injure Plaintiff and Plaintiff's personal, business, and professional reputation, including Plaintiff's own compelled self-

publication of the defamatory statements to members of the community as well as to prospective employers.

41. Plaintiff is informed, believes and fears that these false and defamatory per se statements will continue to be published by Defendants, and each of them, and will be foreseeably republished by their recipients, all to the ongoing harm and injury to Plaintiff's business, professional, and personal reputations. Plaintiff also seeks redress in this action for all foreseeable republications, including Plaintiff's own compelled self-publication of these defamatory statements.

42. The defamatory meaning of all of the above-described false and defamatory statements and their reference to Plaintiff, were understood by these above-referenced third person recipients and other members of the community who are known to Defendants, and each of them, but unknown to Plaintiff at this time.

43. None of Defendants' defamatory publications against Plaintiff above are true.

44. The above defamatory statements were understood as assertions of fact, and not as opinion. Plaintiff is informed and believes this defamation will continue to be negligently, recklessly, maliciously, and intentionally published and foreseeably republished by Defendants, and each of them, and foreseeably republished by recipients of Defendants' publications, thereby causing additional injury and damages for which Plaintiff seeks redress by this action.

45. Each of these false defamatory per se publications (as set forth above) were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege (which Plaintiff denies existed), since the publications, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in order to justify the illegal and cruel actions of Defendants, and each of them, to cause further damage to Plaintiff's professional and personal reputation, and to cause Plaintiff's employment to be terminated.

///

46. Each of these publications by Defendants, and each of them, were made with knowledge that no investigation supported the unsubstantiated and obviously false statements. Defendants published these statements knowing them to be false, unsubstantiated by any reasonable investigation. These acts of publication were known by Defendants, and each of them, to be negligent to such a degree as to be reckless. In fact, not only did Defendants, and each of them, have no reasonable basis to believe these statements, but they also had no belief in the truth of these statements, and in fact knew the statements to be false. Defendants, and each of them, excessively, negligently, and recklessly published these statements to individuals with no need to know, and who made no inquiry, and who had a mere general or idle curiosity of this information.

47. The above complained-of publications by Defendants, and each of them, were made with hatred and ill will towards Plaintiff and the design and intent to injure Plaintiff, Plaintiff's good name, reputation, employment and employability. Defendants, and each of them, published these statements, not with an intent to protect any interest intended to be protected by any privilege, but with negligence, recklessness and/or an intent to injure Plaintiff and destroy Plaintiff's reputation. Therefore, no privilege existed to protect any of the Defendants from liability for any of these aforementioned publications or republications.

48. As a proximate result of the publication and republication of these defamatory statements by Defendants, and each of them, Plaintiff has suffered injury to his personal, business and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, and general damage in an amount according to proof.

49. Defendants, and each of them, committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil motive amounting to malice (as described

above), and which abused and/or prevented the existence of any conditional privilege, which in fact did not exist, and with a reckless and conscious disregard of Plaintiff's rights. All actions of Defendants, and each of them, their agents and employees, herein alleged were known, ratified and approved by the Defendants, and each of them. Plaintiff thus is entitled to recover punitive and exemplary damages from Defendants, and each of them, for these wanton, obnoxious, and despicable acts in an amount based on the wealth and ability to pay according to proof at the time of trial. Defendants' defamatory publications were a substantial factor in causing Plaintiff harm. Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court.

**FOURTH CAUSE OF ACTION**

**(Intentional Infliction of Emotional Distress**
**Against All Defendants, and Does 1 through 10)**

50. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

51. The conduct of Defendants, and each of them, as set forth above was so extreme and outrageous that it exceeded the boundaries of a decent society and lies outside the compensation bargain. Said conduct was intended to cause Plaintiff severe emotional distress or was done in conscious disregard of the probability of causing severe emotional distress. Said conduct was also in direct violation of California law public policy, specifically those found in the Labor Code, Business & Professions Code, and under common law.

52. As a proximate result of the wrongful conduct of Defendants, and each of them, Plaintiff has sustained substantial losses in earnings and other employment benefits in an amount according to proof at the time of trial.

53. As a further proximate result of the wrongful conduct of Defendants, Plaintiff has suffered and continues to suffer grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and severe emotional distress and mental anguish, all to Plaintiff's damage in an amount according to proof at the time of trial.

54. In doing the acts herein alleged, Defendants, and each of them, through their managing agents, acted with oppression, fraud, malice, and in the conscious disregard of the rights of Plaintiff; therefore, Plaintiff is also entitled to punitive damages in an amount according to proof at the time of trial.

**FIFTH CAUSE OF ACTION**

**(Breach of Employment Contract**

**Against DEFENDANT EMPLOYERS, and Does 1 through 10)**

55. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

56. Plaintiff entered into an oral employment agreement with DEFENDANT EMPLOYERS whereby he would perform services as an employee and be compensated for that work, and that while Plaintiff was originally illegally misclassified as an independent contractor, DEFENDANT EMPLOYERS would classify him as an employee instead and provide to him all benefits of employment status. DEFENDANT EMPLOYERS breached the agreement by failing to classify him as an employee, failing to provide to him all benefits of employment status, and ultimately by terminating his employment without good cause. DEFENDANT EMPLOYERS past practices also supported that they would make Plaintiff an employee instead of misclassifying him as a contractor, as they had a past pattern and practice of making such conversions with other employees who had been misclassified.

57. DEFENDANT EMPLOYERS' willful breaches of the employment agreement have caused Plaintiff to suffer and continue to suffer damages, including losses of earnings and benefits, in a sum according to proof.

58. As a further result of the wrongful conduct of DEFENDANT EMPLOYERS, Plaintiff is also entitled to attorneys' fees and costs pursuant to California Code of Civil Procedure section 1021.5 and Labor Code section 218.5.

///

///

**SIXTH CAUSE OF ACTION**

**(Breach of Covenant of Good Faith and Fair Dealing Against DEFENDANT EMPLOYERS, and Does 1 through 10)**

59. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

60. The employment agreement and past practices referred to above contained an implied covenant of good faith and fair dealing, which obligated DEFENDANT EMPLOYERS to perform the terms and conditions of the agreements fairly and in good faith and to refrain from doing any act that would prevent or impede Plaintiff from performing any or all of the conditions of the contract that he agreed to perform, or any act that would deprive Plaintiff of the benefits of the contract.

61. Plaintiff performed all the duties and conditions of the employment agreement. DEFENDANT EMPLOYERS knew that Plaintiff had fulfilled all his duties and conditions under the employment agreement, and breached the implied covenant of good faith and fair dealing under the employment agreement by failing to start properly classifying Plaintiff as an employee, and then by discharging Plaintiff intentionally, maliciously, and without good cause, in bad faith.

62. DEFENDANT EMPLOYERS' willful breach of the implied covenant of good faith and fair has caused Plaintiff to suffer and continue to suffer damages, including losses of earnings and benefits, in a sum according to proof.

63. As a further result of the wrongful conduct of DEFENDANT EMPLOYERS, Plaintiff is also entitled to attorneys' fees and costs pursuant to California Code of Civil Procedure section 1021.5 and Labor Code section 218.5.

**SEVENTH CAUSE OF ACTION**

**(Promissory Estoppel Against DEFENDANT EMPLOYERS, and Does 1-10)**

64. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

///

65. DEFENDANT EMPLOYERS repeatedly represented and promised Plaintiff that they would properly classify him as a full-time permanent employe. In reasonable reliance on such promises and conduct by DEFENDANT EMPLOYERS, Plaintiff continued to perform work for them and spent considerable time and energy in that regard, and to the exclusion of exploring other opportunities that he would have explored had he known DEFENDANT EMPLOYERS would never "convert" him to "staff."

66. DEFENDANT EMPLOYERS' promises were a material inducement for Plaintiff to perform these services and to forego other employment opportunities. Plaintiff's reliance was foreseeable and reasonable based on DEFENDANT EMPLOYERS' numerous statements and promises to him.

67. DEFENDANT EMPLOYERS have reneged on the promises made to Plaintiff, on which he reasonably relied, to Plaintiff's great detriment. DEFENDANT EMPLOYERS are estopped from denying their obligations to compensate Plaintiff for the services he performed in reliance on its promises, to avoid injustice to Plaintiff.

68. As a direct and proximate result of the foregoing conduct of DEFENDANT EMPLOYERS, and Plaintiff's reasonable reliance thereon, Plaintiff has suffered general, consequential, and incidental damages in an amount to be proven at trial.

69. As a further result of the wrongful conduct of DEFENDANT EMPLOYERS, Plaintiff is also entitled to attorneys' fees and costs pursuant to California Code of Civil Procedure section 1021.5 and Labor Code section 218.5.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff MATTHEW ELIAS prays for judgment against Defendants SPOTIFY USA, INC.; THE EXECUSEARCH GROUP, LLC; COURTNEY HOLT; and DOES 1 through 10, as follows:

1. For past and future compensatory damages, according to proof;
2. For pre and post-judgment interest at the legal rate;
3. For exemplary and punitive damages according to proof;

4. Injunctive, equitable and declaratory relief;
5. Attorneys' fees and costs of suit;
6. For such other and further relief as the Court deems proper.

Dated: June 30, 2020

JAVANMARDI LAW, PC | HOLMQUIST LAW, PC

By: [signature]
Peter A. Javanmardi
Marc A. Holmquist
Attorneys for Plaintiff
MATTHEW ELIAS

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Dated: June 30, 2020

JAVANMARDI LAW, PC | HOLMQUIST LAW, PC

By: [signature]
Peter A. Javanmardi
Marc A. Holmquist
Attorneys for Plaintiff
MATTHEW ELIAS